Freeman, J.,
delivered the opinion of the court:
This cáse is to be decided as an action of trover alone, though there are two other counts in the declaration — one on the facts of the case, the other for money had. and received. The court, however, on motion of the defendant, compelled the plaintiff to elect on which count he would proceed, whereupon he elected to go on his count for trover, and so the case was determined on the issues made on this feature of the case. The jury, under the charge of the court, found a verdict for plaintiff, from which this is an appeal in error to this court. The referees have reported for affirmance, to which defendant below files exceptions, opening the main question in the case.
The contract for the breach of which the suit is brought was substantially as follows: Epperson was a cotton buyer at Bell’s depot, ITaywood county, Tennessee, besides carrying on a farm of his own, on Avhich he raised considerable cotton. In the latter part of the summer of 1881, he called on Galbreath & Co., and they estimated the cotton crop of that year would be considerably short of an average; therefore concluded the price would advance rapidly after the season should be developed, which would be some time after the cotton season had opened. 'They being experienced cotton factors in Memphis, and so advising Epperson, and he agreeing with them in opinion, he proposed they should advance money to him to buy cotton, to be shipped to them, to be held for the expected rise; he to have profit, after repaying advances, commission, charges, etc., the profit to the merchant advancing being his commissions, interest for advancing, probably other incidental advantages. The proof shows, beyond doubt, that the cotton was to be held for sale in the Memphis market and sold, after advance in price, in that market, for account of the *275 shipper. Epperson was to keep up a margin in the hands of Galbreath & Co., of ten bales for every hundred, oaten per cent., purchased by him under the contract referred to. The testimony shows Epperson shipped, in all, about '602 bales to defendant, and this by about the last of October, 1881, when he ceased to do so, under the advice of Galbreath & Co., though he may have bought some other cotton shipped to other factors. The proof shows pretty clearly, if not beyond question, that instead of holding the cotton for an advance, as agreed by the contract, Gal-breath & Go-. began to sell, and sold in Memphis, by the second of ETovember, 1881, 136 bales, and shipped to Liverpool, by ETovember 22d, of this cotton, 466 bales, as we suspect, reaping advantages to themselves by the handling of this cotton — realizing money, by way of advance in the foi'eign shipments, to use in their business.
Without any notice to plaintiff of the facts, they kept him under the belief his cotton was in Memphis until June 20, 1882, when they reported a sale of it to William Bowles & Son, of Memphis, Tennessee, and rendered an account of sales, with costs and charges, showing a balance against Epperson of upwards of $1,900, for which Epper-son gave his note in July, 1882, having expressed himself satisfied with the transaction by letter before. He, how-evei-, says he was not, but felt sure he had been swindled; but knew of no means of detection, as the whole matter had been done by Galbreath & Co., and he supposed their books would be made to show it all right against him. Acting on this, as he says, he afterwards shipped, about Christmas, we believe, thirty bales of cotton to Galbreath & Co., proceeds to be applied to payment, in part, of said note. In January after, however, he went to Memphis, and called on William Bowles & Son; found from them that no such sata had ever been made as represented; that it was all fictitious, and a mode adopted simply to close out his account with Galbreath & Co. He thereupon called *276 on Galbreatli, of tie firm of Galbreatli & Co., who, when confronted with the fact that Epperson had learned from Bowles & Son that said cotton had not been purchased by them, as represented, admitted he had shipped it to Liverpool, and sold it, as he assumed, for Epperson’s best interest. This is not denied in fact, we believe.
The theory of the defense on this question is that defendant assumes he has done no wrong to plaintiff by all this; and that he had the right to assume a fictitious sale, at market price, of the twentieth of June; charge storage, commission, insurance, interest, etc., up to that date; and if the cotton was sold, or rather, was accounted for, at that date, at fair market price, plaintiff could not complain. We need not go into the details of this voluminous record, a summary of which we have given, in order to the decision of the case in hand. It suffices to say that on all the contested facts, the question has been fairly left to the jury by the charge of his honor, the circuit judge, and they were well Avarranted in finding them against the defendant. We have carefully examined the charge of his honor, the circuit judge, and agree with the referees that it is a fair and full statement of the iaAv applicable to the issues submitted to the jury. It goes on the theory that if Galbreath & Co. violated their contract under which the cotton was shipped to them, and assumed an unauthorized control of it, and made an unauthorized disposition of the same, then plaintiff Avas entitled, as for a conversion, to the damages sustained by reason of such unauthorized conduct. The requests of the defendant were unnecessary to be given the jury, even if correct, as the entire issues were covered by the original charge. There can be no doubt of the correctness of the theory of his honor, and as little as to' the verdict of the jury having ample warrant in the testimony.
The judgment will be affirmed, and report of referees approved.